UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| AUBREY F. GANDY, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 2:17-cv-303<br>) |
| NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security, | )<br>)<br>)<br>) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the Commissioner filed by the plaintiff, Aubrey F. Gandy, on July 14, 2017. For the following reasons, the decision of the Commissioner is **REMANDED.**

*Background*

The plaintiff, Aubrey F. Gandy, filed applications for Disability Insurance Benefits and Supplemental Security Income on June 23, 2015, alleging a disability onset date of April 25, 2015. (Tr. 17). The Disability Determination Bureau denied Gandy's application initially on October 20, 2015, and again upon reconsideration on January 14, 2016. (Tr. 17). Gandy subsequently filed a timely request for a hearing on March 14, 2016. (Tr. 17). A hearing was held on February 13, 2017, before Administrative Law Judge (ALJ) Edward Kristof, and the ALJ issued an unfavorable decision on March 1, 2017. (Tr. 17-27). Vocational Expert (VE) Richard T. Fisher and Gandy appeared and testified at the hearing. (Tr. 17). The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3).

Gandy met the insured status requirements of the Social Security Act through March 31, 2016. (Tr. 19). At step one of the five-step sequential analysis for determining whether an

individual is disabled, the ALJ found that Gandy had not engaged in substantial gainful activity since April 25, 2015, the alleged onset date. (Tr. 19).

At step two, the ALJ determined that Gandy had the following severe impairments: bipolar disorder, post-traumatic stress disorder (PTSD), borderline functioning disorder, and an abdominal gunshot wound with a history of pancreatitis. (Tr. 20). Gandy's non-severe impairments consisted of breathing issues, palpitations, and visual acuity problems. (Tr. 20). However, the ALJ determined that Gandy's non-severe impairments did not cause more than a minimal limitation on his ability to perform basic work activities. (Tr. 20).

At step three, the ALJ concluded that Gandy did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 20). The ALJ determined that Gandy's mental impairments, considered singly and in combination, did not meet or medically equal the criteria of Listings 12.04, 12.11, and 12.15. (Tr. 20). The ALJ considered the paragraph B criteria for mental impairments, which required at least one extreme or two marked limitations in a broad area of functioning:

> understanding, remembering, or applying information; interacting with others; concentrating, persisting or maintaining pace; and adapting or managing oneself.

(Tr. 20). The ALJ defined a marked limitation as functioning independently, appropriately, effectively, and on a sustained basis, while an extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. (Tr. 20-21).

The ALJ determined that Gandy had moderate limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing himself. (Tr. 21). Because Gandy's mental

2

impairments did not cause at least two "marked" limitations or one "extreme" limitation, the paragraph B criteria was not satisfied. (Tr. 21). Additionally, the ALJ determined that the paragraph C criteria was not satisfied. (Tr. 21).

After consideration of the entire record, the ALJ then assessed Gandy's residual functional capacity (RFC) as follows:

> [T]he claimant has the residual functional capacity (RFC) to lift and carry up to 50 pounds occasionally, 25 pounds frequently, stand and/or walk about 6 hours in an 8-hour workday, and sit about 6 hours in an 8-hour workday with normal breaks. The claimant is to be exposed to no more than moderate noise environments. He is to avoid all exposure to unprotected heights or dangerous moving machinery, and can understand, remember, and carry out instructions needed to perform unskilled, simple, and repetitive work. The claimant is further limited to only occasional, brief, and superficial interaction with coworkers and supervisors, and no interaction with the public as part of any job duties. He cannot perform tandem work, or fast-paced/piece-rate work, and would likely be off-task 5% of the workday beyond regular breaks. Of note, the claimant alleges restricted ability to read, write, and perform basic math, so even though he has completed the 11th grade, in light of the claimant's borderline functioning the academic capacities for this individual has been taken into consideration at the limited level as defined in 20 CFR 404.1567(c) and 416.967(c).

(Tr. 21). The ALJ explained that in considering Gandy's symptoms he followed a two-step process. (Tr. 22). First, he determined whether there was an underlying medically determinable physical or mental impairment that was shown by a medically acceptable clinical or laboratory diagnostic technique that reasonably could be expected to produce Gandy's pain or other symptoms. (Tr. 22). Then, he evaluated the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limited Gandy's functioning. (Tr. 22).

The ALJ found that Gandy's medically determinable impairments reasonably could be expected to cause the alleged symptoms. (Tr. 23). However, the ALJ indicated that Gandy's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 23). The

ALJ noted that Gandy had a history of inconsistent outpatient treatment, with diagnoses consisting of bipolar, most recent episode depression, PTSD, borderline intellectual functioning, and a GAF assignment of 50. (Tr. 23). Also, Gandy had difficulty when he was off his medications. (Tr. 25). Yet, the ALJ noted that Gandy sustained a full prescription and treatment coverage throughout the period under consideration. (Tr. 25). Gandy's treating sources did not suggest that he was incapable of taking his medications reliably or that he had undesirable side effects. (Tr. 25). Thus, the ALJ found that the record suggested that he did not make taking his medications a priority, which the ALJ determined was consistent with the longitudinal picture of the unreliability and inconsistency in his assertions regarding the impact of his impairments on his functioning. (Tr. 25).

At step four, the ALJ found that Gandy had no past relevant work. (Tr. 25). Considering Gandy's age, education, work experience, and RFC, the ALJ concluded that there were jobs in the national economy that he could perform, including laundry laborer (52,000 jobs nationally), cook's helper (85,000 jobs nationally), and meat trimmer (43,000 jobs nationally). (Tr. 26). The ALJ found that Gandy had not been under a disability, as defined in the Social Security Act, from April 25, 2015 through the date of this decision, March 1, 2017. (Tr. 26-27).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); ***Moore v. Colvin***, 743 F.3d 1118, 1120–21 (7th Cir. 2014); ***Bates v. Colvin***, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the

correct legal standards and supported her decision with substantial evidence."). Courts have defined substantial evidence as "such relevant evidence as a reasonable mind might accept to support such a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 852 (1972) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); *see Bates*, 736 F.3d at 1098. A court must affirm an ALJ's decision if the ALJ supported his findings with substantial evidence and if there have been no errors of law. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

Disability and supplemental insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**. The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. §§ 404.1520, 416.920**. The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." **20 C.F.R. §§ 404.1520(b), 416.920(b)**. If he is, the claimant is not disabled and the evaluation process is over. If he is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. §§ 404.1520(c), 416.920(c)**; *see Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's

impairments).  Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations.  **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**.  If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling.  However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of his past work.  If, at this fourth step, the claimant can perform his past relevant work, he will be found not disabled.  **20 C.F.R. §§ 404.1520(e), 416.920(e)**.  However, if the claimant shows that his impairment is so severe that he is unable to engage in his past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of his age, education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy.  **42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1520(f), 416.920(f)**.

Gandy has requested that the court reverse the ALJ's decision and remand for additional proceedings.  In his appeal, Gandy has argued that:  (1) the ALJ made his own independent medical findings in determining Gandy's mental limitations; (2) the ALJ's hypothetical question to the VE and the RFC failed to account for Gandy's limitations in mental functioning; (3) the ALJ improperly evaluated the medical opinion of Dr. Tran; and (4) the ALJ analysis of Gandy's symptoms did not comply with SSR 16-3p.

Gandy has argued that the ALJ created an evidentiary deficit when he assigned reduced weight to Dr. Tran's opinion and failed to consider the State agency psychologists' opinions.  Therefore, Gandy asserts that the ALJ made his own independent medical findings in determining the mental RFC.  An ALJ is not required to rely solely on medical opinions to determine the RFC.  ***Suide v. Astrue,*** 371 F. App'x 684, 690 (7th Cir. 2010) (finding that the

6

rejection of the opinion record left an evidentiary deficit because the rest of the record did "not support the parameters included in the ALJ's residual functional capacity determination"); *Schmidt v. Astrue,* 496 F.3d 833, 845 (7th Cir. 2007) (recognizing that an ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians). However, it is the role of the ALJ to resolve conflicts in the evidence and to formulate an appropriate RFC based on consideration of the entire record. *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995) (the determination of RFC "is an issue reserved to the [Commissioner]," based on "the entire record, including all relevant medical and nonmedical evidence" and "if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.").

Gandy contends that the ALJ filled the evidentiary deficit with his own unqualified medical determination. The ALJ in the RFC finding determined that Gandy could not perform tandem work, or fast-paced/piece-rate work, and that he would likely be off-task 5% of the workday beyond regular breaks. However, there is no basis in the record for the ALJ's specific limitations. It is unclear how or why the ALJ determined that Gandy was restricted to no fast-paced or piece-rate work and that he would be off-task 5% of the workday. Thus, the ALJ did not make a logical connection between the evidence and his conclusion.

The Commissioner, without citing any authority, has argued that in a previous decision dated April 24, 2015, the ALJ found that Gandy would be off-task for 5% of the workday and that decision was not appealed, therefore it was final. However, the ALJ included no such argument in his decision, so the court will not consider this argument. *See Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) (noting that *SEC v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943), "forbids an agency's lawyers to defend the agency's decision on grounds that the

agency itself has not embraced"). Gandy's current claim alleges a disability one day after the previous decision was issued. The Seventh Circuit has held that subsequent determinations for different time periods are independent and that previous decisions are irrelevant. ***Rucker v. Chater***, 92 F.3d 492 (7th Cir. 1996); ***Reynolds v. Bowen***, 844 F.2d 451, 453-54 (7th Cir. 1988); ***Jessee v. Berryhill***, 2018 WL 797393, at *5 (S.D. Ind. 2018). An ALJ must build an accurate and logical bridge from the evidence to the conclusion, and there is no authority for the proposition that a second ALJ may build a logical bridge from a prior ALJ decision. ***Penrod o.b.o Penrod v. Berryhill***, 2017 WL 3141187, at *4 (N.D. Ind. 2017).

Moreover, under SSR 96-8p the ALJ was required to provide a narrative discussion describing how the evidence supported each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). The ALJ has failed to explain how the medical evidence supported the RFC finding. Therefore, the court is unable to follow why the ALJ determined that Gandy was not more limited.

Next, Gandy has argued that the ALJ's hypothetical question to the VE and the RFC failed to account for all his limitations in concentrating, persisting, or maintaining pace. The ALJ's RFC assessment and the hypothetical posed to the VE must incorporate all of the claimant's limitations supported by the medical record. ***Yurt v. Colvin***, 758 F.3d 850, 857 (7th Cir. 2014) (citing ***O'Connor-Spinner v. Astrue***, 627 F.3d 614, 619 (7th Cir. 2010)); ***Indoranto v. Barnhart***, 374 F.3d 470, 473–74 (7th Cir. 2004) ("If the ALJ relies on testimony from a vocational expert, the hypothetical question he poses to the VE must incorporate all of the claimant's limitations supported by medical evidence in the record."). The question must include any deficiencies the claimant has in concentration, persistence, or pace. ***Yurt***, 758 F.3d at 857; ***O'Connor-Spinner***, 627 F.3d at 619 ("Among the limitations the VE must consider are

8

deficiencies of concentration, persistence and pace."); *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) (indicating the hypothetical question "must account for documented limitations of 'concentration, persistence, or pace'") (collecting cases). The most effective way to ensure that the VE is fully apprised of the claimant's limitations is to include them directly in the hypothetical. *O'Connor-Spinner*, 627 F.3d at 619.

The ALJ assessed the mental RFC as follows:

> He is to avoid all exposure to unprotected heights or dangerous moving machinery, and can understand, remember, and carry out instructions needed to perform unskilled, simple, and repetitive work. The claimant is further limited to only occasional, brief, and superficial interaction with coworkers and supervisors, and no interaction with the public as part of any job duties. He cannot perform tandem work, or fast-paced\piece-rate work, and would likely be off-task 5% of the workday beyond regular breaks. Of note, the claimant alleges restricted ability to read, write, and perform basic math, so even though he has completed the 11th grade, in light of the claimant's borderline functioning the academic capacities for this individual has been taken into consideration at the limited level as defined in 20 CFR 404.1567(c) and 416.967(c).

(Tr. 21).

Courts repeatedly have held terms like "simple, repetitive tasks" alone do not exclude from the VE's consideration those positions that present significant problems with concentration, persistence, or pace. *Stewart*, 561 F.3d at 684–85 (finding hypothetical limited to simple, routine tasks did not account for limitations of concentration, persistence, or pace); *see also Varga v. Colvin,* 794 F.3d 809, 814 (7th Cir. 2015). Similarly, hypotheticals limiting the claimant to minimal social interaction with coworkers, supervisors, or the general public failed to account for difficulties in maintaining concentration, persistence, or pace. *Stewart*, 561 F.3d at 685; *see also Varga,* 794 F.3d at 814. Additionally, the Seventh Circuit has held that limiting a claimant to no fast-paced production requirements does not adequately define the limitations for someone with a moderate limitation in concentration, persistence, or pace. *Varga*, 794 F.3d

9

at 815. Such a term must be defined, or else it would be "impossible … to assess whether a person with [the claimant's] limitations could maintain the pace proposed." *Varga,* 794 F.3d at 815. Thus, there is the question of what the ALJ meant by "fast-paced." He did not define the term. The Seventh Circuit has called this "problematic" and explained that "[w]ithout such a definition, it would have been impossible for the VE to assess whether a person with [plaintiff's] limitations could maintain the pace proposed." *Varga,* 794 F.3d at 815. The RFC has failed to account for Gandy's limitations in concentrating, persisting, or maintaining pace.

Moreover, the RFC and the hypothetical posed to the VE must incorporate all of the claimant's limitations supported by the medical record. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). The State agency psychologists found that Gandy was moderately limited in his ability to respond appropriately to changes in the work setting. (Tr. 149, 161, 177, 191). Additionally, they found that Gandy had moderate limitations in his ability to complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without unreasonable number and length of rest periods. (Tr. 149, 161, 176, 190). The ALJ's decision did not discuss the State agency opinions. Therefore, the ALJ did not consider Gandy's ability to respond appropriately to changes in the work setting. Work place changes deal largely with workplace adaptation. *Varga,* 794 F.3d at 815. A hypothetical posed to a VE must incorporate *all* of the claimant's limitations supported by the medical record—if not the ALJ committed reversible error. *See Yurt,* 758 F.3d at 857. Also, the ALJ is required to evaluate every medical opinion in the record. **20 C.F.R. § 404.1527(c).**

Moreover, Gandy pointed to evidence in the record that he had racing thoughts and problems with focus and concentration, which indicated an inability to stay on task. (Tr. 536, 544). He reported isolation within the home and difficulty leaving at times, which indicated

absenteeism. (Tr. 539, 649). The ALJ asked the VE his opinion concerning off-task time (15% of the workday) and an employer's tolerance for absences in the workplace. He did not explain why he questioned the VE about those issues. Those limitations were not adopted in the decision. Therefore, despite considering the issues of off-task time and absenteeism, the ALJ failed to provide any analysis about such consideration. *See* **Kukec v. Berryhill,** 2017 WL 5191872, at *4 (N.D. Ill. 2017) ("the Court endeavored to follow the ALJ's analysis, but the entire off-task bridge and conclusion have disappeared after the ALJ's hypothetical to the VE."). On remand, the ALJ is directed to consider the entire medical record and to incorporate all of Gandy's limitations in the RFC finding and hypothetical to the VE.

Next, Gandy has argued that the ALJ did not properly address the regulatory factors under 20 C.F.R. § 404.1527(c) when evaluating the opinion of Dr. Tran. A treating source's opinion is entitled to controlling weight if the "opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. **20 C.F.R. § 404.1527(c)(2)**; *see* **Bates v. Colvin**, 736 F.3d 1093, 1099 (7th Cir. 2013); **Punzio v. Astrue**, 630 F.3d 704, 710 (7th Cir. 2011); **Schmidt v. Astrue**, 496 F.3d 833, 842 (7th Cir. 2007). The ALJ must "minimally articulate his reasons for crediting or rejecting evidence of disability." **Clifford v. Apfel**, 227 F.3d 863, 870 (7th Cir. 2000) (quoting **Scivally v. Sullivan**, 966 F.2d 1070, 1076 (7th Cir. 1992)).

"'[O]nce well-supported contradicting evidence is introduced, the treating physician's evidence is no longer entitled to controlling weight' and becomes just one more piece of evidence for the ALJ to consider." **Bates**, 736 F.3d at 1100. Controlling weight need not be given when a physician's opinions are inconsistent with his treatment notes or are contradicted

by substantial evidence in the record, including the claimant's own testimony. *Schmidt*, 496 F.3d at 842 ("An ALJ thus may discount a treating physician's medical opinion if the opinion is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as he minimally articulates his reasons for crediting or rejecting evidence of disability."); *see, e.g.*, *Latkowski v. Barnhart*, 93 F. App'x 963, 970-71 (7th Cir. 2004); *Jacoby v. Barnhart*, 93 F. App'x 939, 942 (7th Cir. 2004).

If the ALJ decides that the treating physician's opinion should not be given controlling weight, the ALJ is "required by regulation to consider certain factors in order to decide how much weight to give the opinion." *Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014). These factors are set forth in **20 C.F.R. § 404.1527(c)(1)-(5)** and include: 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) supportability; 4) consistency with the record as a whole; and 5) whether the treating physician was a specialist in the relevant area.

The ALJ assigned reduced weight to Dr. Tran's opinion. (Tr. 24). Dr. Tran indicated that the highest GAF score she assigned Gandy in the past year was 53. However, she had assigned a GAF score of 57 and 58. Thus, the ALJ concluded that, in providing an opinion of Gandy's functioning, Dr. Tran had not referred back to her own prior reports, which diminished the evidentiary value and reduced the weight of the opinion. (Tr. 24). The ALJ indicated that the RFC finding accommodated most of the limitations in the narrative portions of Dr. Tran's statements. However, the ALJ determined that her statement that Gandy had no useful ability to function or was unable to meet competitive standards in most areas of work-related functioning was not supported by the record as a whole. (Tr. 24). Additionally, the ALJ cited inconsistencies from Dr. Tran's September 2016 and January 2017 opinions. (Tr. 25).

An ALJ first must determine whether the treating source's opinion is entitled to controlling weight in consideration of supportability and consistency with the record. If the ALJ finds the opinion is lacking in either of these aspects, the ALJ must proceed to step two, where he applies the checklist of factors articulated in 20 C.F.R. § 404.1527. The ALJ must use these factors to determine exactly what weight to assign to the opinion. This process consists of two "separate and distinct steps." ***Williams v. Berryhill***, 2018 WL 264201, at *3 (N.D. Ill. Jan. 2, 2018). The court acknowledges that an ALJ need not explicitly mention every factor, so long as his decision shows that he "was aware of and considered many of the factors." ***Schreiber v. Colvin***, 519 F. App'x 951, 959 (7th Cir. 2013).

The ALJ discussed the supportability and consistency of Dr. Tran's opinion, while also acknowledging that Dr. Tran was Gandy's treating psychiatrist. However, the ALJ did not consider the length of the relationship and the frequency of examination, as well as the nature and the extent of the relationship. Gandy indicated that he had a treating relationship with Dr. Tran since July of 2015 and that she treated him frequently, sometimes monthly. The length and the nature and extent of the treating relationship are factors that weighed heavily in Dr. Tran's favor, pursuant to 20 C.F.R. § 404.1527. Additionally, the ALJ noted inconsistencies in Dr. Tran's findings from September 2016 and January 2017. However, the ALJ failed to account for Gandy's bipolar I disorder. Bipolar is episodic, so the fact that Gandy experienced some good days does not in and of itself mean that he would not have bad days in the future. *See **Jelinek v. Astrue***, 662 F.3d 805, 814 (7th Cir. 2011). The ALJ is directed to reevaluate Dr. Tran's opinion.

Gandy has argued that the ALJ did not comply with SSR 16-3p in considering his subjective symptoms. An ALJ's evaluation of subjective symptoms will be upheld unless it is patently wrong. ***Shideler v. Astrue,*** 688 F.3d 306, 310-11 (7th Cir. 2012). Nevertheless, an ALJ

13

must explain his evaluation with specific reasons that are supported by the record. ***Pepper v. Colvin,*** 712 F.3d 351, 367 (7th Cir. 2013). Under SSR 16-3p, an ALJ must assess the claimant's subjective symptoms rather than assessing his "credibility."

Under SSR 16-3, the ALJ first must determine whether the claimant has a medically determinable impairment that reasonably could be expected to produce his symptoms. SSR 16-3p, 2016 WL 1119029, at *2. Then, the ALJ must evaluate the "intensity, persistence, and functionally limiting effects of the individual's symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities." SSR 16-3p, 2016 WL 1119029, at *2. An individual's statements about the intensity and persistence of the pain may not be disregarded because they are not substantiated by objective medical evidence. SSR 16-3p, 2016 WL 1119029 at *5. In determining the ability of the claimant to perform work-related activities, the ALJ must consider the entire case record, and the decision must contain specific reasons for the finding. SSR 16-3p, 2016 WL 1119029, at *4, 9. The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

    (i) The individual's daily activities;

    (ii) Location, duration, frequency, and intensity of pain or other symptoms;

    (iii) Precipitating and aggravating factors;

    (iv) Type, dosage, effectiveness, and side effects of any medication;

    (v) Treatment, other than medication, for relief of pain or other symptoms;

    (vi) Other measures taken to relieve pain or other symptoms;

    (vii) Other factors concerning functional limitations due to pain or other symptoms.

*See* **20 C.F.R. § 404.1529(c)(3).**

The ALJ discounted Gandy's statements concerning the intensity, persistence, and limiting effects of his symptoms because they were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 23). The ALJ explained why the objective medical evidence did not support his complaints of pain. Also, the ALJ addressed Gandy's daily living activities and found that "the records show a much more functionally able individual than the claimant alleges." (Tr. 23).

However, the ALJ noted "some inconsistencies" in the record, yet he did not indicate what inconsistences he was referencing. *Perry v. Colvin,* 945 F. Supp. 2d 949, 965 (N.D. Ill. 2013) ("[T]he act of summarizing the evidence is not the equivalent of providing an analysis of the evidence."). The ALJ's decision did not explain the specifics of the inconsistencies. *Zurawski v. Halter,* 245 F.3d 881, 887 (7th Cir. 2001). Additionally, the ALJ indicated that the record suggested that Gandy did not make taking his medications a priority. A claimant's course of treatment (or lack thereof) or non-compliance with a medication regimen can be a basis for questioning his allegations, but the ALJ must inquire into any reasons for that lack of treatment or non-compliance. SSR 16-3p, 2016 WL 1119029, at *7. The ALJ's finding is based on what the record "suggests," rather than an inquiry into Gandy's reasons for non-compliance.

Moreover, the Commissioner has argued that the ALJ considered: (1) Gandy's alleged inability to wash and to shave, yet he did not appear disheveled at various office visits; (2) Gandy's street drug use; (3) Gandy's alleged vision problems that were unsupported by the record; and (4) that Gandy's condition improved when he took his medication as directed. An ALJ must assess the claimant's subjective symptoms rather than assessing his "credibility." SSR 16-3p. The subjective symptom evaluation is not an examination of an individual's character.

On remand, the ALJ is directed to evaluate of Gandy's subjective complaints, as prescribed by SSR 16-3p.

Gandy identified inconsistencies with the VE's testimony and the *Dictionary of Occupational Titles* (DOT). He asserts that the ALJ's handling of the VE's testimony did not meet the requirements of SSR 00-4p. However, since the court has remanded this matter, it need not consider the arguments presented by Gandy as they relate to SSR 00-4p and the apparent conflicts with the DOT.

Based on the foregoing reasons, the decision of the Commissioner is **REMANDED** for further proceedings consistent with this order.

ENTERED this 12th day of March, 2019.

/s/ Andrew P. Rodovich
United States Magistrate Judge